829 F.2d 1121
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald Houston HARBIN, Jr., Defendant-Appellant.
 No. 86-5167.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 4, 1987.
Decided Sept. 23, 1987.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Bryson City. David B. Sentelle, District Judge. (CR 86-26-B)
 (Allan R. Tarleton, Van Winkle, Buck, Wall, Starnes & Davis, P.A., on brief), for appellant.
 (Charles R. Brewer, United States Attorney, James R. Fitzner, Assistant United States Attorney, on brief), for appellee.
 Before JAMES DICKSON PHILLIPS and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Ronald H. Harbin was convicted of possessing a concealed weapon while in Great Smoky Mountains National Park. He appeals from a district court decision affirming a magistrate's finding that the search and seizure of Harbin's gun was legal. We agree with the district court that the search was constitutional.
 
 
 2
 While Harbin was walking on the park roadside with what appeared to be luggage late one afternoon, a ranger stopped to talk with him about the dangers of walking through the park and the severe weather predicted for that evening.
 
 
 3
 As they conversed, Harbin kept one hand in his pocket while he gesticulated with his other hand. The ranger became fearful that Harbin was holding a gun in his pocket and asked Harbin if he had a weapon. Harbin responded by stepping backward, rolling his head back, and becoming evasive. When the ranger asked a second time, Harbin said, "Let me explain something to you first."
 
 
 4
 The ranger then quickly patted the outside of Harbin's pocket, and Harbin stepped back. The ranger grabbed Harbin's hand and pulled it out of the pocket revealing a liquor bottle.
 
 
 5
 The ranger asked again if Harbin had a weapon. Harbin stated, "Let me explain something about that." When the ranger asked where the gun was, Harbin disclosed that it was in his belt and let the ranger take it. At trial Harbin argued that the stop and frisk was unconstitutional.
 
 
 6
 The reasonableness of any search must be determined by balancing the governmental interest in searching against the invasion of privacy which the search entails. Terry v. Ohio, 392 U.S. 1, 20 (1968), cited in United States v. Epperson, 454 F.2d 769, 771 (4th Cir.), cert. denied, 406 U.S. 947 (1972). These interests are balanced by a two-part test: 1) whether the search was justified at its inception; and 2) whether its scope was reasonably related to the circumstances. Id.
 
 
 7
 A search is justified at its inception when a reasonably prudent person in the circumstances would be warranted in a belief that his safety or that of others was in danger. Terry, 392 U.S. at 27. The ranger did not need to be absolutely certain that Harbin was armed. See id. Considering all of the circumstances, we find the ranger's fear for his own or the public's safety justifiable. Harbin's responses to the repeated question of whether he had a gun formed the basis for the ranger's reasonable suspicion. Harbin became evasive and would not answer when first asked, then after further questioning stated, "Let me explain something to you first." These responses would lead a reasonably prudent person to believe Harbin was armed and that the ranger's safety or that of others was in danger.
 
 
 8
 When the ranger patted down Harbin and pulled Harbin's hand out of the pocket, there was a valid Terry stop. Thus, we find that the search was justified at its inception.*
 
 
 9
 In addition, the scope of the intrusion was limited to the circumstances. The ranger patted down the outside of Harbin's pocket, and when Harbin pulled away, the ranger pulled Harbin's hand out of the pocket. The duration of the search was a matter of seconds. The ranger's purpose was to protect himself and others, and his search was limited to that purpose. Moreover, failure to find the gun in the pocket did not dispel the ranger's suspicion as it was based both on Harbin's concealed hand and his responses to the direct question of whether he had a weapon. Nonetheless, the ranger refrained from searching further. Instead, he chose to question Harbin. We find that the scope of the intrusion was indeed limited.
 
 
 10
 As the search was based on reasonable suspicion and was limited in scope to the circumstances, we hold that the search and seizure was not unreasonable under the fourth amendment.
 
 
 11
 We dispense with oral argument as it would not significantly aid the decisional process and affirm the district court.
 
 
 12
 AFFIRMED.
 
 
 
 *
 We do not agree with Harbin's argument that when the law being broken is "carrying a concealed weapon," no frisk may take place absent a reasonable suspicion that some other illegal activity had been or was about to be committed. See Epperson, 454 F.2d at 769 (frisk for concealed weapon justifiable where metal detector raised reasonable suspicion that boarding airline passenger had a gun)